ILLINOIS CONSTRUCTORS CORPO-
RATION, a corporation, Plaintiff,

v.

MORENCY & ASSOCIATES, INC.,
a corporation, d/b/a Morency,
Weible & Sapa, Defendant.

No. 92 C 2738.

United States District Court,
N.D. Illinois, E.D.

Sept. 29, 1992.

On Motion for Reconsideration
Nov. 23, 1992.

Terrence James Goggin, Robert Emmett Mahoney, Edwin J. Hull, III, Goggin, Cutler, Hull & Hartigan, Chicago, Ill., for plaintiff.

Willis Rollin Tribler, Michael Joseph Meyer, Tribler & Orpett, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court are the motions of defendant Morency & Associates, Inc., d/b/a Morency, Weible & Sapa ("Morency") to dismiss for failure to state a claim pursu-

ant to Fed.R.Civ.P. 12(b)(6) and to strike the complaint's prayer for attorney's fees pursuant to Fed.R.Civ.P. 12(f). For reasons that follow, the court denies both motions.

## FACTS

According to the complaint, Morency is an insurance broker plaintiff Illinois Constructors Corporation ("Illinois Constructors") hired to represent its interests before insurance underwriters in order to secure insurance for its business operations. Morency is allegedly familiar with Illinois Constructors's onshore and marine operations due to Morency's relationship with Illinois Constructors since 1984. On or about August 1, 1991, Morency negotiated an Ocean Marine Insurance contract on behalf of Illinois Constructors through the St. Paul Insurance Company of Illinois. This policy failed to provide for pollution coverage.

On December 22, 1991, Illinois Constructors's tugboat M/V Dutch Gap sank in the Mississippi River at the Power Plant dam between Rock Island, Illinois and Arsenal Island, Illinois. Illinois Constructors engaged the services of various entities to clean up the diesel fuel polluting the Mississippi River and the adjoining river bank as a consequence of the accident. As a result of Morency's failure to secure pollution coverage, Illinois Constructors had no coverage for claims arising out of the spill or indemnification for money expended on the clean-up.

On April 24, 1992, Illinois Constructors brought suit against Morency alleging breach of contract, negligence, and breach of fiduciary duty, invoking this court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1) and Fed.R.Civ.P. 9(h). It seeks to recover for expenses incurred by the clean-up and third-party liability claims as well as for damages it shall become legally liable to pay in the future. The court earlier determined that Illinois Constructors's agreement with Morency for the procurement of insurance for Illinois Constructors's tugboat fell within the ambit of federal court admiralty jurisdiction under 28 U.S.C. § 1333(1). *See Illinois Constructors Corp. v. Morency & Assoc., Inc.,* 794 F.Supp. 841, 842 (N.D.Ill.1992).

Referring to Illinois law, Morency presently claims that Illinois Constructors's three count complaint fails to state a claim for breach of contract, negligence, or breach of fiduciary duty. Illinois Constructors asserts that admiralty law controls the case, or alternatively, the complaint sufficiently states a claim under Illinois law.

## DISCUSSION

On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991), as well as all reasonable inferences drawn from those allegations. *Nelson v. Monroe Regional Medical Center,* 925 F.2d 1555, 1558 (7th Cir.1991). Because federal courts simply require "notice pleading," a complaint need not specify the correct legal theory nor point to the right statute to survive a motion to dismiss. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). The court must construe the pleadings liberally, and mere vagueness or lack of detail alone does not constitute sufficient grounds to dismiss a complaint. *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). Accordingly, a party fails to state a claim only if that party can prove no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992).

In the absence of a controlling federal statute or established rule of maritime law, a federal district court sitting in admiralty applies state law to disputes over contracts of marine insurance. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). This rule is equally applicable to contracts for the procurement of insurance and disputes arising from the relationship between the insurance broker and its principal. Because neither party points to a federal statute or rule of maritime law governing the present case, resort must be made to state law.[1]

In determining which state's substantive law is to apply to claims subject to

---

1. Before this court's July 20, 1992 order, federal courts considered agreements to procure marine insurance contracts as nonmaritime in nature, therefore no maritime law has developed on the present issues. *Cf. Graham v. Milky Way Barge, Inc.,* 923 F.2d 1100, 1105 (5th Cir.1991) (because agreement to procure marine insurance not maritime, state law governed).

the admiralty jurisdiction of the federal courts, federal choice-of-law rules govern. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991); *State Trading Corp. v. Assuranceforeningen Skuld,* 921 F.2d 409, 414 (2d Cir.1990). Federal courts sitting in admiralty apply the law of the state with the most significant relationship to the dispute. *See Commercial Union Ins. Co. v. Horne,* 787 F.Supp. 337, 339 (S.D.N.Y.1992) (Connecticut law applied to marine insurance policy); *In re Litigation Involving Alleged Loss of Cargo,* 772 F.Supp. 707, 712 (D.P.R.1991) (Florida law applied to availability of direct action against legal liability insurer).

By briefing Illinois law, the parties concede Illinois bears the most significant relationship to the dispute, and the court agrees. Accordingly, Illinois law governs the contract claim in Count I. As for Counts II and III, the claims are in substance the same as the claim in Count I in that each addresses the same set of acts or omissions preliminary to the production of the maritime insurance policy. Thus, Counts II and III are governed by Illinois law as well.

■ First, the court turns to the issue of Illinois Constructors's recovery for the expenses incurred by the clean-up and by third-party liability claims—purely economic losses. A federal court applying state law must determine how the appropriate state supreme court would decide the issue if presented before it. *Ross,* 957 F.2d at 413. The Illinois Supreme Court's decision in *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d

443 (1982) bars recovery of purely economic loss in most tort actions in Illinois.[2] Nonetheless, Illinois Constructors's claims in Counts I and III are based on contract and agency theories and thus *Moorman* is inapplicable. *See St. Paul Fire & Marine Ins. Co. v. Great Lakes Turnings, Ltd.,* 774 F.Supp. 485, 490 (N.D.Ill.1991) (*Moorman* does not bar recovery under contract or agency theories).

■ Illinois Constructors's negligence claim in Count II is more troubling. The court is mindful of Illinois's reluctance to create exceptions to the *Moorman* doctrine's ban on recovery of economic loss in circumstances analogous to those of the present. *See, e.g., 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 233–34, 555 N.E.2d 346, 352–53 (1990) (*Moorman* bars negligence claim for professional malpractice against architect); *Bulk Service Corp. v. Buick,* 203 Ill. App.3d 739, 148 Ill.Dec. 814, 815–16, 561 N.E.2d 120, 121–22 (1990) (Illinois law precludes recovery of purely economic loss in negligence action against insurance consultant; distinguished between consultant and broker). The *Moorman* doctrine also bars recovery of economic losses caused by other professional malpractice claims, although it does not apply to certain extra-contractual duties such as an attorney's duties. *2314 Lincoln Park West,* 144 Ill. Dec. at 234, 555 N.E.2d at 353.[3]

Nonetheless, the court is persuaded by the reasoning of *Lake County Grading Co. v. Great Lakes Agency, Inc.,* 226 Ill. App.3d 697, 168 Ill.Dec. 728, 589 N.E.2d 1128 (1992) that Illinois law supports recov-

**2.** Two exceptions articulated in *Moorman* are intentional misrepresentation claims and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations. *Moorman,* 61 Ill.Dec. at 755, 435 N.E.2d at 452. However, Illinois Constructors's response to the motion to dismiss points out that it is not seeking recovery under either misrepresentation theories. Furthermore, Illinois Constructors has also failed to plead that Morency is in the business of supplying information to its customers. *See Bulk Service Corp. v. Buick,* 203 Ill.App.3d 739, 148 Ill.Dec. 814, 815–16, 561 N.E.2d 120, 121–22 (1990) (*Moorman* barred claim against insurance consultant where plaintiff failed to allege defendant in business of supplying information to customers); *see also Lake County Grading Co. v. Great Lakes Agency, Inc.,* 168 Ill.Dec. 728, 731–32, 589 N.E.2d 1128,

1131–32 (1992) (distinguished *Bulk Service* because complaint alleged broker in business of furnishing information which it knew would be relied upon by customers).

**3.** The Illinois Supreme Court has determined that *Moorman* bars recovery in attorney malpractice claims when the attorney-client relationship is merely contractual and not extracontractual. *Collins v. Reynard,* No. 70325, 1991 WL 220561, at *5, 1991 Ill. LEXIS 104, at * 15 (Ill. Oct. 31, 1991) ("Absent Reynard's breach of a duty arising independently of the contract, there is no reason to allow this cause of action for attorney malpractice under a tort theory of negligence. Although a different result may be reached where ... extracontractual, fiduciary or ethical duties are at issue ..."). However, that decision has not been released officially, pending rehearing.

ery against an insurance broker on a theory of negligence. The Illinois Appellate Court in *Lake County Grading*, a 1992 decision, held that a plaintiff may recover for economic loss from an insurance broker because the insurance broker's extracontractual fiduciary duty to procure insurance was a duty in tort to prevent precisely the type of harm that occurred. *Id.* 168 Ill.Dec. at 731–32, 589 N.E.2d at 1131–32; *see also Economy Fire & Casualty Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 486, 525 N.E.2d 539, 544 (1988) (tort liability imposed on insurance broker for failure to obtain proper insurance coverage; *Moorman* not addressed). An insurance broker's extracontractual duty arises from the contract and from the relationship between itself and its principal. Here, Morency enjoyed a relationship as insurance broker with Illinois Constructors since 1984, nearly seven or eight years prior to the accident, and was allegedly entrusted with a large degree of responsibility. Accordingly, the court can grant Illinois Constructors legal relief in the form of economic damages.

■■■■■ Under Illinois law, an insurance broker must exercise reasonable skill and diligence in the procurement of insurance for its principal. *Scarsdale Villas Assoc. Ltd. v. Korman Assoc. Ins. Agency, Inc.*, 178 Ill.App.3d 261, 127 Ill.Dec. 463, 465, 533 N.E.2d 81, 83 (1988). The broker is accordingly liable for any loss the principal may bear as a result of the broker's failure to procure proper insurance. *Id.* Such a claim may sound in breach of contract, negligence, or breach of fiduciary duty. *See, e.g., Lake County Grading*, 226 Ill. App.3d 697, 168 Ill.Dec. 728, 589 N.E.2d 1128 (negligence); *Scarsdale*, 178 Ill. App.3d 261, 127 Ill.Dec. 463, 533 N.E.2d 81 (contract); *Pickett v. First Am. Sav. & Loan Ass'n*, 90 Ill.App.3d 245, 45 Ill.Dec. 531, 412 N.E.2d 1113 (1980) (negligence, fiduciary duty, and contract); *see also St. Paul Fire & Marine*, 774 F.Supp. at 489–90 (contract and fiduciary duty).

■■■■■ A contract to procure insurance is established where (1) one party proposes to be insured and the other party agrees to find insurance; (2) the court can ascertain the subject, period, amount and rate of insurance; and (3) the premium is paid. *Scarsdale*, 127 Ill.Dec. at 465, 533 N.E.2d at 83. Moreover, a factfinder may imply a contract to procure insurance from past dealings between the parties, correspon-dence between the parties, conversations between the parties, or customs prevalent in the locale. *Pickett*, 45 Ill.Dec. at 537, 412 N.E.2d at 1119; *see also United States Fidelity & Guaranty Co. v. Continental Casualty Co.*, 198 Ill.App.3d 950, 145 Ill. Dec. 53, 58, 556 N.E.2d 671, 676 (1990) (contractual duties may arise from inferences drawn from facts and circumstances).

■■■■ Illinois Constructors sufficiently alleges a breach of contract in Count I. In paragraph four of the complaint, Illinois Constructors alleges that Morency "impliedly contracted to provide and did provide" brokerage services; and in paragraph eleven, Illinois Constructors alleges Morency "contracted ... to provide Illinois Constructors with insurance to protect it from any and all risks arising out of its business operation." Illinois Constructors further claims that it paid Morency a commission for the provision of insurance brokerage services.

Morency therefore breached the contract by failing to provide Illinois Constructors with insurance coverage sufficient to protect it from all risks arising out of the maritime aspect of its business operation— namely the risk of pollution. Illinois Constructors claims Morency knew or should have known that Illinois Constructors's vessels may release pollutants into the waters through fortuitous occurrences thus necessitating pollution coverage. Therefore, because the contract Morency procured contained a "Pollution Exclusion" clause and Morency was aware that various insurance underwriters provided pollution coverage to vessel owners and operators, Morency breached its contract by failing to advise Illinois Constructors of, or analyze and present to Illinois Constructors, the availability of pollution coverage. Morency's liability will depend on the extent of the understanding between the parties and the expectations resulting from Illinois Constructors prior dealings with Morency. Accordingly, Illinois Constructors sufficiently plead a breach of contract to procure marine pollution coverage.

■■■■ Count II claims Morency failed to exercise reasonable skill and diligence in the transaction of the business Illinois Constructors entrusted to Morency. *See Lake County Grading*, 168 Ill.Dec. at 732, 589 N.E.2d at 1132 ("Illinois places a particular burden on an insurance broker to exercise

competence and skill in rendering services"); *Scarsdale,* 127 Ill.Dec. at 465, 533 N.E.2d at 83 (broker must exercise reasonable skill and diligence in transaction of business). Specifically, Illinois Constructors alleges that Morency breached its duty to act as a competent insurance broker on behalf of Illinois Constructors by failing to advise Illinois Constructors that its policy contained no coverage for pollution cleanup or liability, by failing to advise Illinois Constructors that underwriters were willing and able to provide pollution coverage, by failing to act competently in evaluating the costs and benefits of purchasing pollution coverage versus the risk of operating on the inland waters without pollution coverage, by failing to competently advise Illinois Constructors as to its insurance requirements by failing to become familiar with Illinois Constructors's operations, and by failing to broker an umbrella liability coverage which would cover pollution risks. This is sufficient to allege a negligence claim.

■ Count III claims that Morency breached the fiduciary duty owed Illinois Constructors. To state a claim for breach of fiduciary duty by an insurance broker, a plaintiff must allege that he or she enjoyed a fiduciary relationship with the defendant insurance broker, that the broker owed specific duties to plaintiff, that the broker breached those duties, and that the breach damaged plaintiff. *St. Paul Fire ·& Marine,* 774 F.Supp. at 489–90. As an insurance broker, Morency owed a fiduciary duty to Illinois Constructors. *See Lake County Grading,* 168 Ill.Dec. at 732, 589 N.E.2d at 1132 (relationship of broker and proposed insured is fiduciary one); *Economy Fire,* 121 Ill.Dec. at 485, 525 N.E.2d at 543 (same). The complaint sufficiently alleges that Morency breached its duty by failing to act in accordance with custom and practice prevailing in the community with regard to insurance brokers through all of the above mentioned inactions.

■ Last, the court turns to Morency's motion to strike Illinois Constructors's prayer for attorney's fees. It is not unusual for a complaint to make a request for attorney's fees in its prayer for relief. As a result, the motion to strike is premature in that later developments may justify a request for fees. *See generally Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293 (2nd Cir.1987) (discussing availability of attorney's fees in admiralty cases), *cert. denied,* 484 U.S. 1042, 108

S.Ct. 774, 98 L.Ed.2d 860 (1988); *Knudson v. LeMarr,* 787 F.Supp. 835 (N.D.Ill.1992) (discussing American rule as to availability of fees and costs). Accordingly, the court denies the motion to strike Illinois Constructors's prayer for attorney's fees as premature and may revisit the issue later.

In sum, the complaint sufficiently states a claim under Illinois law against Morency and the motion to strike the prayer for attorney's fees is premature.

### CONCLUSION

For the reasons stated above, the court denies Morency's motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(1). The court also denies Morency's motion to strike the prayer for attorney's fees pursuant to Fed.R.Civ.P. 12(f).

IT IS SO ORDERED.

### ON MOTION FOR RECONSIDERATION

Before the court is the motion of defendant Morency & Associates, Inc. d/b/a Morency, Weible & Sapa ("Morency") for reconsideration of this court's September 29, 1992 order denying its motion to dismiss for failure to state a claim. Morency focuses its motion on this court's conclusion that Illinois law would allow an action sounding in negligence against an insurance broker to recover for purely economic loss. For reasons stated below, the motion to reconsider is denied.

[19] Motions for reconsideration serve a limited function. They are ordinarily used to correct clear errors of law or fact or to present newly discovered evidence which could not have been adduced during the pendency of the motion. *Kohl v. Murphy,* 767 F.Supp. 895, 904 (N.D.Ill.1991). Morency argues that this court's interpretation of and reliance upon *Lake County Grading Co. v. Great Lakes Agency, Inc.,* 226 Ill.App.3d 697, 168 Ill.Dec. 728, 589 N.E.2d 1128 (1992) was erroneous. Defense counsel zealously argues that this court should distinguish this case from *Lake County Grading* because that case involved a claim of negligent misrepresentation and was not a straight claim of negligence in the procurement of insurance.

Notwithstanding counsel's earnest advancement, the Illinois Appellate Court's reasoning in *Lake County Grading,* even if it were mere dicta, supports this court's

conclusion. If *Lake County Grading* stood only for the proposition that insurance brokers can be held liable for economic damages when an action is brought for negligent misrepresentation, then the appellate court was merely restating a settled proposition. That a claim of negligent misrepresentation survives *Moorman* was decided in *Moorman* itself. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 755, 435 N.E.2d 443, 452 (1982) (two exceptions are intentional misrepresentation claims and where one who is in the business of supplying information for the guidance of others in their business makes negligent representations).

Moreover, in *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990), the Illinois Supreme Court altered the inquiry somewhat. Instead of merely trying to fit a claim into some neat exception enumerated in the *Moorman* case itself, the court made evident that it is the nature of the particular duty upon which a court must rely when deciding whether a negligence claim falls within the *Moorman* doctrine. *See 2314 Lincoln Park West*, 144 Ill.Dec. at 233–34, 555 N.E.2d at 352–53 (noting that an exception exists where defendant owes duty to prevent precisely the type of harm, economic or not, that occurred). Hence, the Illinois Appellate Court in *Lake County Grading* relied heavily on the strong extra-contractual duty of insurance brokers in making what this court believes is a broader decision than that which Morency advocates. *Lake County*, 168 Ill.Dec. at 732, 589 N.E.2d at 1132.

The history of negligence claims against insurance brokers in Illinois before *Moorman* and even after *Moorman* further exemplifies the important duties of insurance brokers. *See Scarsdale Villas Assoc., Ltd. v. Korman Assoc. Ins. Agency, Inc.*, 178 Ill.App.3d 261, 127 Ill.Dec. 463, 465, 533 N.E.2d 81, 83 (1988); *Economy Fire & Casualty Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 486, 525 N.E.2d 539, 544 (1988); *Pickett v. First Am. Sav. & Loan Ass'n*, 90 Ill.App.3d 245, 45 Ill.Dec. 531, 412 N.E.2d 1113 (1980).

Therefore, in light of the important duty Illinois law places on insurance brokers to procure insurance adequate for their principals, and the broader language and reasoning of the *Lake County Grading* case, the court's prior decision is correct.

Accordingly, Morency's motion for reconsideration is denied.

IT IS SO ORDERED.